## FIRST NATIONAL CITY BANK OF NEW YORK, Defendant, Appellant,

v.

## Francisco GONZALEZ Martinez, Plaintiff, Appellee.

### No. 5749.

United States Court of Appeals First Circuit.

Heard Feb. 13, 1961.
Decided Aug. 25, 1961.

Wallace Gonzalez Oliver, New York City, with whom Edward M. Borges and McConnell, Valdes & Kelley, San Juan, P. R., were on brief, for appellant.

A. Rivera Valdivieso, Hato Rey, P. R., with whom Raul A. Feliciano, Rio Piedras, P. R., was on brief, for appellee.

Before WOODBURY, Chief Judge and MAGRUDER * and HARTIGAN, Circuit Judges.

MAGRUDER, Circuit Judge.

The complaint in this case was originally filed in the Superior Court of Puerto Rico, San Juan Part, on November 30, 1959. It was timely removed to the federal district court in San Juan,

---

2. Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 12, 57 S.Ct. 330, 81 L. Ed. 465.

* Sitting by designation.

which had jurisdiction of the cause of action pursuant to 12 U.S.C.A. § 632.

On June 27, 1958, plaintiff borrowed $384.00 from the defendant First National City Bank of New York at its branch office in Santurce in the Municipality of San Juan, Puerto Rico. He signed a note in which he agreed to repay the loan in twelve monthly installments of $32.00 each, payable on the 27th of each month. Plaintiff's wife, Alfredo Caceres, and Felix Tollinche signed as co-makers on the note. Prior to February, 1959, the plaintiff, except in one instance, had not made the payments by the due date. The bank did not notify the co-makers of those delays, however, but it had assessed "late charges" of $1.60 for the August, 1958, payment overdue. The February, 1959, payment was not made when due, and on March 24, 1959, defendant wrote to the plaintiff requesting payment and sent copies of the letter to the co-makers. In early April plaintiff purchased a postal money order for $65.60 which he mailed to the defendant in payment of both the February and March installments, as well as payment for the "late charges" assessed for the delinquency of February. This postal money order was collected by the bank, but because of an error in the posting it was not credited to the plaintiff's account and the bank continued to press for payment. The plaintiff as well as the co-makers were approached. According to one of the latter, Alfredo Caceres, "the National City Bank officers * * * called to my office a few times. They wrote me a few letters, and they sent people around to my house." The plaintiff showed the stub of the postal money order to the officers of the bank, but they did not believe what he said and requested that he produce a copy of the money order. It was necessary for him to send to Washington for the copy, which eventually arrived in San Juan at the beginning of September. But in the meantime the plaintiff, on July 3, 1959, had paid all that the defendant demanded and closed out the loan. When the bank officials saw the copy of the money order, they repaid plaintiff the sum of $65.60, and the surcharges they had collected.

Alfredo Caceres testified that before the incident with the bank he had intended to make the plaintiff the general manager of a branch of his business which he was opening in St. Thomas, but that he delayed this venture some three months awaiting the outcome of the trouble with the bank. In addition, there was testimony to the effect that persons other than the co-makers had known of the plaintiff's difficulties with the bank. The district court found as a fact that plaintiff "undoubtedly suffered damage to his reputation and he also suffered mental anguish which were proximately caused by defendant's acts and conduct. Plaintiff's damages on said account are reasonably worth the amount of $2,000.00." The court did not find that the plaintiff had suffered any pecuniary loss because of the three-month delay in opening the St. Thomas place of business. The court also found as a fact that defendant's failure to post the credit to the plaintiff's account was negligence on its part. As conclusions of law, the court stated that plaintiff was entitled to a judgment in the amount of $2,000, for the reason that defendant was liable "for the damages suffered by plaintiff and caused by the former's acts and omissions, pursuant to Title 31 LPRA, Sec. 5141."

The jurisdiction of the federal district court for Puerto Rico was rested upon 12 U.S.C.A. § 632, and although Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, may not be applicable, still it is clear that the federal district court in Puerto Rico must apply to this case the law of Puerto Rico as declared by its insular courts, unless the law so declared is "inescapably wrong" or "patently erroneous." See De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 459, 64 S.Ct. 1121, 88 L.Ed. 1384.

Puerto Rico had on its books § 1802 of its Civil Code of 1930, now found in 31 L.P.R.A. § 5141, the generalization which read as follows: "A person who by an act or omission causes damage to

another when there is fault or negligence shall be obliged to repair the damage so done." The Supreme Cout of Puerto Rico has given great deference to this generalization in the Code. For instance, in Rivera v. Central Pasto Viejo, Inc., 44 P.R.R. 236 (1932), the court said, at p. 266:

"The provisions of our Civil Code are the source of our law with respect to negligence. We are not bound by the common law, nor by the construction given by the courts in the various States of the Union to statutes in force in their respective jurisdictions. It is natural that we should be governed by our own statutes and that we should adopt such principles as arise from their construction and which are in harmony with our civil law. The American jurisprudence is varied and abundant, and constitutes a source of useful information for the judicial mind."

See also Diaz v. San Juan Light & Transit Co., 17 P.R.R. 64, 69 (1911).

Appellant's main contention seems to be that the trial court erred in failing to treat the cause of action as one for libel and slander under 32 L.P.R.A. § 3141 et seq., and that, so considered, the defamatory statements were conditionally privileged and malice was not to be presumed. We do not think that this point is well taken, since the Supreme Court of Puerto Rico has many times held that § 1802 of its Civil Code not only goes beyond the common law of negligence but also may overlap other statutory provisions. See, for example, Rivera v. Fagot, 79 P.R.R. 524 (1956); Hernandez v. Fournier, 80 P.R.R. 94 (1957). Also, in construing § 1802 literally, the Supreme Court of Puerto Rico has held that "[t]he right to claim damages in *ex delicto* actions, for humiliations and mental sufferings, independent of the existence of physical damages, has been definitely established in this jurisdiction." Muriel v. Suazo, 72 P.R.R. 348, 352 (1951). To the same effect, see Rios v. National City Bank, 51 P.R.R.

473 (1937); Rivera v. Rossi, 64 P.R.R. 683 (1945). In the latter case, at p. 689 the court said:

"Section 1802, which in this jurisdiction is the source of the action for damages caused by fault or negligence, Mendez v. Serracante, 53 P.R.R. 807, makes no distinction between physical damages and damages to the feelings. It is inferred from its language and it is so held by the decisions and the text writers, that in order to be compensable the damage must be the natural consequence of the fault or negligence of the person from whom recovery is sought or of the persons for whom the latter is responsible. Civil Code, § 1803. In those cases where we have awarded compensation for mental suffering where physical injury also has been caused, the damages to the feelings have been the natural consequence of the physical injury, and since the latter is in turn the natural consequence of the fault or negligence of the defendant or of the person for whom he is responsible, the award for mental suffering and anguish in those cases has been but the logical application of the general principle of law involved in § 1802. But, must the mental suffering and anguish be subordinated to the existence of a physical injury? If the damages to the feelings have really existed and they are the natural consequence of the wrongful or negligent act of the defendant, or as it is said in the common law, if the proximate cause of the injury is the fault or negligence of the defendant, what logical reason, what principle of justice can prevent compensation? Indeed, is not a humiliation, such as the one suffered by the plaintiff in this case, more important than many physical injuries for which compensation is usually and unhesitatingly awarded? And if § 1802 makes no distinction between the damages to the feelings and the physical damages for the

purpose of compensation, why should we make any distinction?". Certainly, mental or emotional disturbances are compensable by more than nominal damages, as was held in Rios v. National City Bank, supra, 51 P.R.R. 473 (1937), and Maymi v. Banco Popular de Puerto Rico, 63 P.R.R. 515 (1944).

█ Although $2,000 damages was perhaps more than we would have granted had we been the trier of the facts, nevertheless we are not prepared to say that the district court was "clearly erroneous" in its finding of damages in that amount. We do not forget that in Rios v. National City Bank, supra, 51 P.R.R. 473 (1937), the appellate court reduced the damages from $2,000, as found by the district judge, to $250. But in that case the court noted that, upon discovery of its error, the bank did all it could to mitigate damages and that in fact the plaintiff's good name and reputation had not been adversely affected.

A judgment will be entered affirming the judgment of the District Court.