**CITIBANK, N.A., a national banking association, Plaintiff,**

v.

**Andrew BENKOCZY and Geraldine Benkoczy, Defendants.**

**No. 82–1144–Civ–CA.**

United States District Court, S.D. Florida.

March 24, 1983.

Robert A. Shupack, North Miami Beach, Fla., for defendant.

Robert F. O'Malley, Jr., Miami, Fla., for plaintiff.

ATKINS, District Judge.

THIS CAUSE is before the court to determine whether the laws of the Republic of Haiti are applicable to the present action. This is an action by plaintiff, CITIBANK, N.A. ("Citibank"), against defendants, ANDREW BENKOCZY AND GERALDINE BENKOCZY ("Benkoczys"), to recover the principal amount of $130,000 together with interest, costs and attorneys fees based on the Benkoczys' guarantees of the obligations of International Fabricating Industries, S.A., a/k/a Interfab, S.A. ("Interfab"), a corporation organized under the laws of Haiti, to Citibank. Plaintiff claims

that the laws of Haiti should apply to this action, whereas defendants argue that this court should as a matter of public policy decline to enforce those laws and instead apply the laws of the State of Florida.

■ This cause was removed from state court pursuant to 28 U.S.C. §§ 1441 and 1446. In denying plaintiff's motion to remand, this court held that this case arose under 12 U.S.C. § 632[1] and was therefore properly removed pursuant to 28 U.S.C. § 1441(b).[2] Were this a diversity case the decision as to what substantive law to apply would be controlled by the conflicts of law rules of the forum state, Florida. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Day & Zimmermann, Inc., v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). Since this case arises under Section 632, however, it is appropriate to apply a federal common law choice of law rule in deciding which jurisdiction's substantive law ought to apply. *Corporacion Venezolana de Fomento v. Vintero Sales*, 629 F.2d 786, 795 (2d Cir. 1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).[3]

■ Generally, the intention of the parties to a contract of guaranty, the place where the contract was entered into, and the place where the guarantee was to be performed are all important factors in determining the law applicable to a contract of guaranty. Ann., 72 A.L.R.3d 1180, 1183 (1976). Older federal cases relied on the place of performance as the determinative factor. *Pritchard v. Norton*, 106 U.S. (16 Otto) 124, 1 S.Ct. 102, 27 L.Ed. 104 (1882); *Bell & Grant v. Bruen*, 42 U.S. (1 Howard) 169, 182, 11 L.Ed. 89 (1843). *See also Coghlan v. South Carolina R'd Co.*, 142 U.S. 101, 12 S.Ct. 150, 35 L.Ed. 951 (1891) (law of place of performance governs a contract). More modern cases have also looked to the place of the acceptance of the guaranty and of the loans to be guaranteed. *Ladd & Bush v. Hayes*, 105 F.2d 292 (9th Cir.1939).

■ The guarantees in question do not indicate what law the parties intended to apply. Each of the guarantees was, however, executed in Haiti and each expressly stated that it was to be performed at Port-au-Prince, Haiti. Furthermore, the underlying obligations which were to be guaranteed were also created and executed entirely in Haiti. The only connection this action has with Florida is that the Benkoczys pres-

1. Title 12, United States Code, Section 632 provides in pertinent part that:
   Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

2. This court also held that 12 U.S.C. § 632 created an exception to the usual requirement of 28 U.S.C. § 1441(b) that in order to remove an action to federal court none of the defendants may be a citizen of the state in which the action was brought.

3. The Second Circuit relied upon *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), for the proposition that where a case arises as a "federal question" but there is no federal statutory rule of law a federal court may formulate a federal common law rule of decision. Thus, by analogy, where a case arises under a federal statute, federal common-law choice of law principles ought to be applied to resolve any conflicts as to the substantive rule of law to be applied. This route has been followed by the Supreme Court in admiralty cases. *See Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). See R. Leflar, American Conflicts Law § 66 (3d Ed.1977). The principle of *Clearfield* and the example of *Lauritzen* both indicate that the Second Circuit was correct in its conclusion that federal choice of law rules are applicable to actions arising under 12 U.S.C. § 632.

ently reside here and that Citibank chose a Florida state court as its forum. Accordingly, there can be no question that the laws of Haiti govern these guaranties.[4]

The Benkoczys nevertheless argue that the laws of Haiti which would be applicable in the present case do not provide due process and therefore should not, as a matter of public policy, be applied. *Gillen v. United Services Automobile Ass'n,* 300 So.2d 3 (Fla.1974); *Dept. of Motor Vehicles, etc. v. Mercedes Benz, etc.,* 408 So.2d 627 (Fla.2d D.C.A. 1981). The laws which the Benkoczys claim violate due process are articles 91, 92, and 93 of the Haitian Commercial Code.[5] Article 91 allows the creation of a commercial "warrant" or lien on goods to guarantee a debt, giving rise to a right in the creditor to sell the warranted goods if the debtor fails to pay the debt when due.[6] Article 92 requires the creditor to obtain possession of the warranted goods, although this may be evidenced merely by the credi-

tor's holding the keys to the rooms where the goods are stored.[7] Finally, article 93 allows the creditor automatically to sell the goods in case of non-payment of the debt at maturity, eight days after actual or constructive service on the debtor of notice of such sale.[8] Article 95 of the Code protects the debtor's right to notice by declaring invalid any contractual provision which purports to allow the creditor to appropriate or sell the warranted goods without following the procedures set forth in Article 93. Haitian law apparently also provides for public notice of the sale at least forty-eight hours in advance of the sale.

The Haitian procedure for sale of goods held by a creditor to secure a debt is parallel to that provided by the Uniform Commercial Code for enforcement of a warehouseman's lien. Uniform Commercial Code § 7–210,[9] Fla.Stat. § 677.210 (1966 & Supp.1982). The Supreme Court has clearly stated that the private remedy provided by

4. The court notes that the same result would be obtained if Florida conflicts of law rules were applied. *See Jemco, Inc. v. United Parcel Service, Inc.,* 400 So.2d 499, 500–501 (Fla.3d DCA 1981); *Regal Shoe Shops v. Kleinman,* 361 So.2d 765 (Fla.3d DCA 1978), *cert. denied,* 368 So.2d 1369 (1979).

5. The court as of this time expresses no view as to the actual state of Haitian law or the particular provisions applicable to the case at hand. The court refers to Articles 91, 92, and 93 of the Haitian Commercial Code because these are the sections which the Benkoczys apparently claim denied them due process. For the purposes of this motion the court relies on the translations and interpretations of Haitian law provided by the parties' experts, pursuant to Fed.R.Civ.P. 44.1.

6. Article 91 provides:

"The commercial warrant is a contract by which the debtor remits something to his creditor as guaranty for his debt.

The holder of the warrant will have over the warranted goods the following rights:

1) A lien on the warranted goods, until full payment of the debt.

2) A right to sell in case the debtor fails to pay the debt when due.

3) A privileged status giving priority over such debts as provided by the Haitian Civil Code in its Article 1869, except for the legal expenses, if any".

7. Article 92 of the Haitian Commerce Code provides:

The rights under the warrant agreement are only valid if the warranted goods are in possession of the creditor or an agreed upon third party. The warranted goods or commodities are said to be in the creditor's possession when these goods or commodities are in the storage rooms of the debtor, if the keys to these storage rooms have been remitted to the creditor or if the creditor has closed them with his own padlocks or keys.

8. Article 93 of the Haitian Commerce Code provides:

"In case of non payment at maturity, the creditor, eight days after a simple summons to pay to debtor by personal service or constructive service at his domicile and a notification to third party holding warranted goods, if any, may put the warranted goods up for public auction.

9. UCC § 7–210 provides:

(1) Except as provided in subsection (2), a warehouseman's lien may be enforced by public or private sale of the goods in bloc or in parcels, at any time or place and on any terms which are commercially reasonable, after notifying all persons known to claim an interest in the goods. Such notification must include a statement of the amount due, the nature of the proposed sale and the time and place of any public sale. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the warehouseman is not of itself sufficient to establish that the

section 7–210 does not violate the Due Process or the Equal Protection clauses of the Fourteenth Amendment. *Flagg Bros., Inv., v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).[10] The Benkoczys' argument that Haitian law denied them due process is thus without merit.

Accordingly, this court finds and hereby ORDERS AND ADJUDGES that the sub-

stantive rules of decision of the laws of Haiti are applicable to and shall be applied in this cause.

sale was not made in a commercially reasonable manner. If the warehouseman either sells the goods in the usual manner in any recognized market therefor, or if he sells at the price current in such market at the time of his sale, or if he has otherwise sold in conformity with commercially reasonable practices among dealers in the type of goods sold, he has sold in a commercially reasonable manner. A sale of more goods than apparently necessary to insure satisfaction of the obligation is not commercially reasonable except in cases covered by the preceding sentence.

(2) A warehouseman's lien on goods other than goods stored by a merchant in the course of his business may be enforced only as follows:

(a) All persons known to claim an interest in the goods must be notified.

(b) The notification must be delivered in person or sent by registered or certified letter to the last known address of any person to be notified.

(c) The notification must include an itemized statement of the claim, a description of the goods subject to the lien, a demand for payment within a specified time not less than ten days after receipt of the notification, and a conspicuous statement that unless the claim is paid within the time the goods will be advertised for sale and sold by auction at a specified time and place.

(d) The sale must conform to the terms of the notification.

(e) The sale must be held at the nearest suitable place to that where the goods are held or stored.

(f) After the expiration of the time given in the notification, an advertisement of the sale must be published once a week for two weeks consecutively in a newspaper of general circulation where the sale is to be held. The advertisement must include a description of the goods, the name of the person on whose account they are being held, and the time and place of the sale. The sale must take place at least fifteen days after the first publication. If there is no newspaper of general circulation where the sale is to be held, the advertisement must be posted at least ten days before the sale in not less than six conspicuous places in the neighborhood of the proposed sale.

(3) Before any sale pursuant to this section any person claiming a right in the goods may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section. In that event the goods must not be sold, but must be retained by the warehouseman subject to the terms of the receipt and this Article.

(4) The warehouseman may buy at any public sale pursuant to this section.

(5) A purchaser in good faith of goods sold to enforce a warehouseman's lien takes the goods free of any rights of persons against whom the lien was valid, despite noncompliance by the warehouseman with the requirements of this section.

(6) The warehouseman may satisfy his lien from the proceeds of any sale pursuant to this section but must hold the balance, if any, for delivery on demand to any person to whom he would have been bound to deliver the goods.

(7) The rights provided by this section shall be in addition to all other rights allowed by law to a creditor against his debtor.

(8) Where a lien is on goods stored by a merchant in the course of his business the lien may be enforced in accordance with either subsection (1) or (2).

(9) The warehouseman is liable for damages caused by failure to comply with the requirements for sale under this section and in case of willful violation is liable for conversion.

R. Anderson, 3 Uniform Commercial Code, § 7–210 (1971).

**10.** *But see Svendsen v. Smith's Moving & Trucking Co.,* 54 N.Y.2d 865, 444 N.Y.S.2d 904, 429 N.E.2d 411 (1981), U.S. *cert. denied,* 455 U.S. 927, 102 S.Ct. 1292, 71 L.Ed.2d 471 (1982) (New York Court of Appeals held Article 7–210 unconstitutional under due process clause of New York State Constitution). Since this is not a diversity case the court need not concern itself with state constitutional provisions. *See* note 3, *supra.* The court notes, however, that Florida courts have upheld the validity of similar UCC provisions for repossession of collateral by self-help and for private sale of such collateral. *Northside Motors of Fla., Inc. v. Brinkley,* 282 So.2d 617 (Fla.1973) (upholding Fla.Stat. 679.503, U.C.C. § 9–503); *Shirey v. Gov't Employee's Corp.,* 287 So.2d 729 (Fla.3d

DCA 1974) (upholding Fla.Stat. 679.504, U.C.C.    § 9–504).