Ana Maria **EDELMANN**, et al., Plaintiffs,

v.

The **CHASE MANHATTAN BANK**, N.A., Defendant.

Civ. No. 85–0756 (JAF).

United States District Court, D. Puerto Rico.

Aug. 31, 1987.

Edelmiro Salas García, San Juan, Puerto Rico, for plaintiffs.

Jay A. García Gregory, Fiddler, Gonzalez & Rodriguez, San Juan, Puerto Rico, for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This case is before the court on a motion for summary judgment. Fed.R.Civ.P. 56. The question presented is whether plaintiffs may enforce against defendant nine matured bearer certificates of deposit issued in the year 1958 by a Cuban banking branch of The Chase Manhattan Bank (Defendant).[1] The factual scenario surrounding this claim is as follows: Ana Maria Edelmann and Joseph Saif (the Edelmann's) were citizens and residents of

---

1. Defendant is a national bank organized under the laws of the United States. Chase is a member of the Federal Reserve System.

Cuba long before the establishment of the Fidel Castro communist regime in said country. While living in Cuba, the Edelmann's deposited with defendant's Havana branch the amount of $175,000 Cuban Pesos, for which seven bearer certificates of deposit were issued. The bearer certificates matured on December 29, 1959.

Plaintiffs made additional banking transactions at defendant's branch in Marianao, Cuba,[2] in the amount of $50,000, for which two certificates of deposit for $25,000 were issued. These certificates matured on December 30, 1959. All the certificates matured and they were not presented for payment on their respective maturity dates.

The accounts of Chase's foreign branches were maintained independently from the head office in New York. It is not until April 3, 1985, twenty-seven years after the certificates of deposit's maturity dates, that a request to honor the certificates was made at defendant's offices in Puerto Rico. Defendant has requested judgment on the pleadings,[3] Fed.R.Civ.P. 12(c), to which the Edelmann's have opposed. After a careful study of the pleadings and motions, opposition, and reply, the court finds in favor of defendant.

### The Applicable Law

■ Jurisdiction is based on title 12 U.S.C. sec. 632 and 28 U.S.C. sec. 1331. The same is not disputed. *See First Federal Savings and Loan Assoc. of P.R. v. Ruiz de Jesús,* 644 F.2d 910, 913 (1st Cir. 1981); *First Nat'l City Bank of N.Y. v. González Martínez,* 293 F.2d 919 (1st Cir. 1961). Had this been a diversity case, 28 U.S.C. sec. 1332, the decision as to what would be the applicable law would be controlled by the conflicts-of-law rules of the forum state. However, since this case properly arises under 12 U.S.C. sec. 632, it is appropriate to apply a federal common law choice of law rule in deciding which jurisdiction's substantive law ought to apply. *Corporación Venezolana de Fomento v. Vintero Sales,* 629 F.2d 786, 795 (2d Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981), *relying on Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *see also Citibank, N.A. v. Benkoczy,* 561 F.Supp. 184 (S.D.Fla.1983); 19 C. Wright & E. Miller, *Federal Practice and Procedure* sec. 4514 at 71. This reasoning is sustained by the legislative intent behind the enactment of section 632. Said section was designed to avoid inconsistent state-court interpretations of the Federal Reserve Act and achieve a goal of uniformity in the area of banking transactions. 12 U.S.C. sec. 632; *People ex rel Cosentino, Treasurer v. Federal Reserve Bank,* 579 F.Supp. 1261, 1264–65 n. 2 (N.D.Ill.1984). Uniformity in the application of federal law is to the benefit of the commercial transactions. *Cf., Santiago v. Sea-Land Service, Inc.,* 366 F.Supp. 1309 (D.P.R.1973) (admiralty context).

### Federal Common Law Conflicts of Law Rule

■ To determine which substantive law will be applied in a suit against a Federal Reserve member bank based on a deposit contract entered into with a foreign branch, it is necessary to examine the right to be enforced by the federal courts. The federal courts are "uniquely suited to develop rational choice-of-law rules responsive to the essential federal nature of the problem. 19 C. Wright & E. Miller, *Federal Practice and Procedure* sec. 4506 at 61, 71; *Klaxon Co. v. Stentor Electric Manuf. Co.,* 313

---

2. These banking branches of The Chase Manhattan Bank were established under permission given by the Board of Governors of the Federal Reserve System, 12 U.S.C. sec. 601. These branches were regulated by Cuban laws, as established by Cuba's Law No. 13, of December 23, 1948.

3. Attached to the complaint were two copies of the bearer certificates of deposit, which read:

The Chase Manhattan Bank, Aguiar No. 310 Branch, makes the representation that on this date there has been established under the control of the Bank, on deposit in favor of the bearer of this certificate, under that stated in paragraph two *of article 115 of Law No. 13 of December 23, 1948 and its Complementary Regulations issued by the National Bank of Cuba,....* (Emphasis added).

**102**

U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The nature of banking transactions require certainty in dealing with negotiable instruments. Some of these commercial/banking instruments [4] are intended to be transferred from one country to another. In this sense, to establish which state forum law is to be applied by the federal courts in a 12 U.S.C. sec. 632 case, we need to consider the (a) nature of the transaction; (b) intention of the parties to the contract as to whether any particular law is to be applied; (c) place where the contract was entered into, and (d) place where it may reasonably be expected to be performed. The courts must weigh all the criteria to determine the forum that has the dominant contacts with the transaction. *Widow of Fornaris v. Amer. Surety Co. of N.Y.*, 93 P.R.R. 28 (1966) (tortious context).

### Claims Barred by the Statute of Limitations

■ In the present case, contrary to the Edelmann's contention, the applicable law is that of Cuba. At the time of issuance of the certificates of deposit, the Edelmann's resided in Cuba. The law closest to the dominant contacts of the transaction was Cuban law. *See González y Camejo v. Sun Life Assurance Co. of Canada*, 313 F.Supp. 1011 (D.P.R. 1970); *Maryland Casualty Co. v. San Juan Racing Ass'n.*, 83 P.R.R. 538 (1961) (the law of the state or country with the most contacts with the contract governs any determination of rights).

■ The copies of the certificates of deposit issued by Chase's Cuban branches attached to the amended complaint establish that the bank agreed to return to the bearer on June 29, 1959 and June 30, 1959 the face value amount of the certificate,

plus 3½% in interest with similar due date of accrual ("con igual fecha de vencimiento"). The certificates of deposit have been treated as a variant of a promissory note, since the documents constitute an acknowledgement from the bank that it has the money there (in Cuba), and that it is obliged to pay the amounts evidenced by the certificates of deposit to any person who presents the certificates duly endorsed. *See* Martínez Val, *Derecho Mercantil* at p. 331 (1979). A certificate of deposit is a negotiable document that evidences a time deposit payable at a fixed date. *See generally*, J. Garriques, *Contratos Bancarios* (2d ed. 1975).

■ The demand of satisfaction of these instruments, as well as all other obligations in a civil-law jurisdiction, are subject to being presented for payment or execution during the period of time set by the law, that is, within the prescriptive term. Extinctive prescription (time-for-suit provisions) is a substantive right according to the Puerto Rico and Cuba civil law, *see* E. Menéndez, *Código Civil, Cuba* Vol. II (1959).[5]

■ The Edelmann's claim is thus typified as a personal action demanding payment which, under the Civil Code then prevailing in Cuba, would have provided a fifteen-year term, *see* art. 1964, Civil Code, Vol. 7, (Publicación de Legislaciones del Ministerio de Justicia, 1st ed. 1975),[6] commencing to run the day the action could have been instituted, that is, December 29 and 30, 1959. Accordingly, the certificates in issue had to be presented for collection and payment within fifteen years after said dates. The Edelmann's had fifteen years to initiate a judicial action to recover the monies allegedly owed. They failed to do

---

**4.** *E.g.*, letters of credit, promissory notes, certificates of deposit.

**5.** In a civil-law context, time-for-suit provisions are of two kinds: prescription and caducity. The first can be tolled under certain circumstances. The second cannot be tolled. *See generally, Fireman's Insurance Co. of Newark v. Gulf-Puerto Rico Lines, Inc.*, 349 F.Supp. 952 (D.P.R.1972).

**6.** We take judicial notice that the Cuban government has repealed all laws which recognized private property and private commercial dealings, *see* art. 1976, Civil Code of Cuba, Vol. 7, (Publicación de Legislaciones del Ministerio de Justicia, 1st ed. 1975). Such uncivilized doing has no bearing here, however, inasmuch as if we were to apply Puerto Rico law, the result would be the same. *See* art. 1864, Civil Code, 31 L.P.R.A. sec. 5294 (1930); G. Velázquez, *Las Obligaciones* at p. 242 (1964).

so. They do not allege any valid cause that interrupts the prescriptive term. We find that this contract claim is, therefore, barred by the applicable statute of limitations. Unfortunately for the Edelmann's, the case shall be DISMISSED.

IT IS SO ORDERED.