**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO,**
Plaintiff, Appellant,

v.

**Hector L. RUIZ DE JESUS et al.,**
Defendants, Appellees.

No. 80–1644.

United States Court of Appeals,
First Circuit.

Submitted Jan. 8, 1981.
Decided March 17, 1981.

Stanley R. Segal, San Juan, P. R., with whom Ramirez, Segal & Latimer, San Juan, P. R., was on brief for plaintiff, appellant.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal raises the question of whether section 632,[1] Title 12 U.S.C., continues to confer jurisdiction on the United States District Court for the District of Puerto Rico to hear cases filed by federally chartered corporations involving banking transactions in Puerto Rico.

The present suit sought to foreclose on a delinquent mortgage. Default was entered against the defendant-appellee by the clerk of the court on August 3, 1980. However, on September 8, 1980 the district court entered an order dismissing the action for lack of jurisdiction. It did so on the basis of a determination made earlier in its comprehensive opinion in *Conjugal Society v. Chicago Title Insurance Company*, 497 F.Supp. 41, 47–51 (D.P.R.1979), to the effect that section 632 no longer applied to banking transactions in Puerto Rico. We are informed that at present there is disagreement among the district judges of Puerto Rico on this issue and that some continue to entertain and adjudicate claims under this statute. Although no formal opinion was entered in this case, and no response was had on appeal by the defendant-appellee, we review the district court's determination on the basis of the reasoning set out in *Conjugal Society v. Chicago Title Insurance Company, supra.*

Puerto Rico's territorial status ended, of course, in 1952. Thereafter it has been a Commonwealth with a particular status as framed in the Puerto Rican Federal Relations Act. Act of July 3, 1950, Pub.L. 600, § 4, 64 Stat. 319; *see also* Act of July 3, 1952, Pub.L. 447, 66 Stat. 327. However, nothing in this legislation expressly or by necessary implication removed Puerto Rico from the reach of section 632. While Puerto Rico's new status rendered the words "dependency or insular possession" somewhat obsolete as to it, the language was nonetheless still sufficient, given the historical context, to encompass the reorganized Commonwealth. Indeed, until the present it has been taken for granted in decisions of this court that the section continued to apply to banking transactions in Puerto Rico. *See Fernandez Diaz v. Pan American Federal Savings and Loan Association*, 635 F.2d 30 (1st Cir. 1980); *The Chase Manhattan Bank v. Corporacion Hotelera de Puerto Rico*, 516 F.2d 1047, 1048, n.1 (1st Cir. 1975); *First National City Bank of New York v. Gonzalez*, 293 F.2d 919, 920 (1st Cir. 1961). *Compare People of Puerto Rico v. Eastern Sugar Associates*, 156 F.2d 316, 320 (1st Cir. 1946) (upholding applicability of section 632 before 1952) The same assumption has until recently prevailed in the reported cases from the District Court of Puerto Rico: *First National City Bank v. Gonzalez & Co. Sucr. Corporation*, 308 F.Supp. 596 (D.P.R. 1970); *First Federal Savings and Loan of*

---

1. 12 U.S.C. § 632 was enacted as section 15 of the Banking Act of 1933, 48 Stat. 184, to amend section 25 of the Federal Reserve Act of 1913, 38 Stat. 273. It provides in part:

   "Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States, or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits ...."

*Puerto Rico v. Zequeira*, 305 F.Supp. 37 (D.P.R.1969); *Gonzalez Roman v. The Federal Land Bank of Baltimore*, 303 F.Supp. 482 (D.P.R.1969). *Compare Martinez v. National City Bank of Puerto Rico*, 80 F.Supp. 545, 547 (D.P.R.1948) (a pre-1952 case in which jurisdiction was assumed under section 632).

Despite this consistent historical understanding that section 632 continued to include banking transactions in Puerto Rico, the district court in *Conjugal Society v. Chicago Title Insurance Company, supra*, strongly influenced by the discussion of this section in two earlier decisions, *Piovanetti Pujals v. First National City Bank*, 440 F.Supp. 731 (D.P.R.1977) and *Rosa Lugo Rios v. First National City Bank*, Civil Number 76–322 (D.P.R. May 24, 1976) (unpublished opinion), concluded that the applicability of section 632 in Puerto Rico had been terminated by passage of section 14 of the 1959 amendments to the national banking laws, Pub.L. 86–230, 73 Stat. 457, 458, codified at 12 U.S.C. § 42.[2] The thrust of these three opinions is that section 42 signalled Congress' intention that, for purposes of acts relating to national banks, including section 632, Puerto Rico is to be considered as something different from a dependency or insular possession. Federal incorporation, therefore, will no longer result in conferring federal court jurisdiction with respect to transactions involving banking in Puerto Rico. *See* 28 U.S.C. §§ 1348, 1349.

The pivotal question in this appeal is the correctness of the foregoing interpretation. We conclude, contrary to the decision of the district court, that section 42 does not afford a basis from which to derive Congress' intention that section 632 cease to apply to banking transactions in Puerto Rico.

We are able to discover no indication that when Congress enacted section 42 it intended to remove Puerto Rico from the scope of section 632—or indeed gave any thought whatever to the viability of section 632 with respect to Puerto Rico. Legislative references in or to section 42 contain no mention of either section 632, the Federal Reserve Act (of which section 632 is a part), or chapter 6 of Title 12 U.S.C. (where section 632 is codified). Other than in the specific terms of section 42 itself, there is no mention of the "Commonwealth of Puerto Rico." *See* S.Rep.No.730, 86th Cong., 1st Sess. at 4, *reprinted in part* [1959] U.S.Code Cong. & Ad.News 2232, 2235–36; H.R.Rep. No.694, 86th Cong., 1st Sess. at 2–3 (1959).[3] It is true that the statement of intention of the 1959 amendments speaks in terms of an act "To amend the national banking laws to clarify or eliminate ambiguities, to repeal certain laws which have become obsolete, and for other purposes." 73 Stat. 457. However, the legislative materials which accompany these amendments show that the repeals which were intended are clearly mentioned and specifically set out. *See* H.R.Rep.No.694, *supra* at 2 (obsolete provisions repealed), *id.* at 16–18 (statements as to changes in existing law); S.Rep.No.730 *supra*, sections 1, 5–8, 22, 24 (specific repealing sections) *id.* at 16–18 (statements as to changes in existing law). Nowhere in these materials is there a reference to either section 632 or Puerto Rico.

If section 42 did in fact remove Puerto Rico from the scope of section 632 it did so only by implication. The opinions in *Conjugal Society* and *Piovanetti Pujals* attach great significance to the fact that in section 42 "the Commonwealth of Puerto Rico" stands separate and apart from "territories." It is suggested that this distinction

**2.** Section 42 provides:
"The provisions of all Acts of Congress relating to national banks shall apply in the several States, the District of Columbia, the several territories and possessions of the United States, and the Commonwealth of Puerto Rico."

**3.** Section 14 of the 1959 Amendments to the National Banking Laws [12 U.S.C. § 42] was

originally section 70 of Title I of the Financial Institutions Act of 1957, S. 1451, 85th Cong., 1st Sess. (1957), an act which was passed by the Senate on March 21, 1957, 103 Cong.Rec. 4140 (1957), but was never enacted into law. The legislative materials accompanying this Act are also silent with respect to 12 U.S.C. § 632, and Puerto Rico. *See* S.Rep.No.121, 85th Cong., 1st Sess. at 31 (1957).

between the two demonstrates a Congressional intent to treat Puerto Rico "as something different from a territory or possession," *Conjugal Society*, 497 F.Supp. at 49, and "at par with the District of Columbia and the several States." *Piovanetti Pujals*, 440 F.Supp. at 731–32. But the fact that the "Commonwealth of Puerto Rico" is listed separately from "territories" in this 1959 enactment reflects nothing more than Congress' recognition that by 1952 Puerto Rico was no longer a territory but rather a "Commonwealth"—a change in status that, as we have already found, did not in and of itself render section 632 (drafted while Puerto Rico was still a territory) inapplicable to banking transactions in Puerto Rico. While, moreover, inclusion of Puerto Rico in section 42 may place the Commonwealth "at a par" with the several states for purposes of the territorial reach of the banking laws, it also by the same reasoning places it "at a par" with the United States' "territories and possessions", to which section 42 makes the banking laws also applicable. Finally, and most important, the territorial reach of the banking laws, and the equivalence of Puerto Rico and the several states for this purpose, says little, if anything, about the scope of federal jurisdiction pursuant to section 632.

Section 632 is a jurisdictional statute defining various types of banking suits which "shall be deemed to arise under the laws of the United States." Whether or not this section, or other provisions, of the federal banking laws "apply" in Puerto Rico by virtue of section 42 has no direct bearing on the extent of the class of suits arising under United States law, as so defined in section 632. Nor does section 42, which pertains only to the territorial application of the banking laws, reflect any congressional intent to alter the scope of federal jurisdiction. Adoption of section 42 did no more than continue what had been stated two years earlier with respect to Guam, 12 U.S.C. § 41,[4] which repeated what had been true with respect to the Virgin Islands since prior to the enactment of section 632, 12 U.S.C. § 40.[5] The legislative material on section 42 reveals no more than an intent to follow the preexisting pattern. *See* H.R. Rep.No.694, *supra* at 2–3; *see also* S.Rep. No.121, 85th Cong., 1st Sess. at 31 (1957). Insofar as we are aware, the Virgin Islands and Guam, to which the national banking laws were also expressly made applicable, *see* notes 4 and 5, remain "insular possessions" for purposes of section 632.

The district court opinions in *Conjugal Society* and *Piovanetti Pujals* suggest that the separate listing in section 42 modifies section 632 insofar as it manifests a congressional awareness of the subtle differences between the post 1952 Commonwealth status of Puerto Rico and—in the words of section 632—other "dependencies or insular possessions." There is no doubt that specific reference to Puerto Rico in any statute simplifies statutory construction by obviating the need to detect whether the statute was meant to extend to Puerto Rico. *See Garcia v. Friesecke*, 597 F.2d 284, 293 (1st Cir. 1979), *cert. denied*, 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 306 (1979); *Moreno Rios v. United States*, 256 F.2d 68 (1st Cir. 1958). But whatever explanation may be given to the fact that Puerto Rico is listed separately in section 42—note that it is also listed separately in 12 U.S.C. § 1466, a pre 1952 statute—we see no reason why sections 42 and 632 cannot coexist, nor do we see any factor indicating that they are repugnant to each other. Moreover, section 632 is a jurisdictional statute (unlike those statutes which define the applications of different chapters of federal banking laws —12 U.S.C. §§ 40–42, 1466, 1772) which would, in the absence of any contrary indication, still retain its full effect after 1952. *Examining Board v. Flores de Otero*, 426

4. Section 41 (70 Stat. 908) provides:
"The National Bank Act, and all other Acts of Congress relating to national banks, shall, insofar as not locally inapplicable hereafter [August 1, 1956] apply to Guam."

5. Section 40 (47 Stat. 703) provides:

"The National Bank Act, as amended, and all other Acts of Congress relating to national banks, shall, insofar as not locally inapplicable hereafter [July 19, 1932], apply to the Virgin Islands of the United States."

U.S. 572, 594–95, 96 S.Ct. 2264, 2277–2278, 49 L.Ed.2d 65 (1976). *Cf. Posadas v. National City Bank*, 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351 (1936) (discussing whether Organic Act for the Philippine Islands of August 29, 1916 repealed provisions of the Federal Reserve Act of 1913 which authorized foreign banking by national banking associations). Finally, we note that the Financial Institutions Act of 1957, *see* note 3 *supra*, which would have made changes in the foreign banking provisions of the Federal Reserve Act, 12 U.S.C. chapter 6, while adding what is now section 42, would have left section 632 completely intact, *see* S.Rep. No.121, *supra* at 47–48 (§§ 52 and 65).

We conclude that there is no basis to find banking transactions in Puerto Rico are no longer encompassed by 12 U.S.C. § 632. We need not, therefore, consider what weight should be accorded the Federal Reserve Board Regulations which define the terms "foreign", "foreign country" and "abroad" to include the Commonwealth of Puerto Rico. 12 C.F.R. § 211.2(a), 213.2(b) (1979); 12 C.F.R. § 211.2(f) (1980). We note only that they are not inconsistent with any conclusion we have reached herein or with at least some congressional manifestations. *Cf.* 12 U.S.C. § 3101(7) (a bank organized in Puerto Rico is a "foreign bank" under International Banking Act of 1978). This is not to say that we are unaware of how Puerto Rico has been treated in other provisions of the federal banking statutes. *See, e. g.,* 12 U.S.C. § 214(a) (for purposes of conversion of a national bank into a state bank a bank organized in Puerto Rico is a "State bank"; 12 U.S.C. § 215b(2) (for purposes of consolidation and merger "state" means Puerto Rico); 12 U.S.C. § 1813(a)–(e) (for purposes of the Federal Deposit Insurance Corporation Puerto Rico is considered a "State"). This disparate treatment, however, necessarily implies a discerning Congress consciously aware of varying implications in extending to Puerto Rico different federal banking statutes.[6] Whether it would be wiser for Congress to adopt a uniform approach is irrelevant for purposes of our review. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intent to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). As the district court opinions in *Conjugal Society* and *Piovanetti Pujals* assert, it could well be true that, with respect to Puerto Rico, section 632 jurisdiction is now outdated. "It is for Congress, however, and not for this Court, to rewrite the statute to reflect changed circumstances." *Comtronics, Inc. v. Puerto Rico Telephone Company*, 553 F.2d 701, 707 (1st Cir. 1977).

*Reversed.*[7]

---

**6.** Note for example that the requirement under the Federal Deposit Insurance Act that national banks insure deposits did not originally extend to deposits in branches of national banks located in Puerto Rico. It was only by specific subsequent legislation that this requirement was extended. Act of July 14, 1952, Pub.L. 533, 66 Stat. 605, amending 12 U.S.C. § 1813(*l*); *see* S.Rep.No.1990, 82nd Cong., 2nd Sess., *reprinted in* [1952] U.S.Code Cong. & Ad.News 2148.

**7.** In light of this decision *Conjugal Society v. Chicago Title Insurance Company*, 497 F.Supp. 41, 47–51 (D.P.R.1979) and *Piovanetti Pujals v. First National City Bank*, 440 F.Supp. 731 (D.P.R.1977) are overruled insofar as they deal with the same question.