**UNITED STATES of America,**
**Plaintiff,**

v.

**Jorge MERCADO–FLORES, Defendant.**

**Crim. No. 14–466 (GAG).**

United States District Court,
D. Puerto Rico.

Signed June 4, 2015.

Julia Meconiates, United States Attorney's Office, San Juan, PR, for Plaintiff.

Johnny Rivera–Gonzalez, San Juan, PR, Luis R. Lugo–Emanuelli, Lugo Emanuelli Law Office, Fajardo, PR, for Defendant.

## OPINION AND ORDER

GUSTAVO A. GELPÍ, District Judge.

On July 17, 2013, a federal grand jury rendered a one-count indictment that charged Defendant Jorge Mercado–Flores with the transportation of a fourteen-year-

old female minor *within* the Commonwealth of Puerto Rico with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). (*See* Case No. 13–408(GAG) at Docket No. 16.) After extensive plea negotiations, Defendant and the Government entered into a plea agreement whereby Defendant agreed to plead guilty by way of an information to violating 18 U.S.C. § 2421, the transportation of an individual, as opposed to a minor, with the intent to engage in criminal sexual activity. (*See* Case No. 14–466(GAG) at Docket No. 6.) Both parties agreed that the mandatory minimum of ten years imprisonment of section 2423(a) was excessive given the particular facts of this case. On July 31, 2014, the court held a change of plea hearing, whereby Defendant filed a waiver of indictment and pled guilty by way of information to 18 U.S.C. § 2421 in criminal case 14–466(GAG). (*See* Docket Nos. 1, 2, 6, and 7.)

Thereafter, on May 11, 2015, the court sentenced Defendant to fifty-seven months imprisonment, based on a violation of 18 U.S.C. § 2421, but reserved judgment on the following jurisdictional matter. (*See id.* at Docket No. 39.) The court questioned whether section 2421 applies to an offense wholly within the Commonwealth of Puerto Rico because unlike section 2423(a), which applies to acts wholly within "any commonwealth, territory or possession of the United States," section 2421 applies only to acts wholly within any "Territory, or Possession of the United States." *Compare* 18 U.S.C. § 2421 (transportation generally) with 18 U.S.C. § 2423(a) (transportation of minors). Accordingly, the court ordered the Government to address this paramount issue of statutory interpretation. The Government timely filed its brief, arguing that section 2421 does indeed apply to Puerto Rico because despite its commonwealth status,

it remains a territory of the United States. (Docket No. 43.)

Upon reviewing the Government's arguments, interpreting the applicable statutes along with the history of the unique relationship between the United States and the Commonwealth of Puerto Rico, and adhering to binding judicial precedent, the court hereby holds that 18 U.S.C. § 2421, which makes it a federal crime to transport any individual within the intent to engage in criminal sexual activity "in interstate or foreign commerce, or in any Territory or Possession of the United States," does not apply to a purely intrastate criminal act committed within the Commonwealth of Puerto Rico. Accordingly, the Judgment at Docket No. 44 is hereby **VACATED.**

## I. Discussion

### A. *Background of the Underlying Penal Statute*

In 1910, Congress enacted the White Slave Traffic Act, also known as the Mann Act, to prohibit, inter alia, the interstate transportation of women for purposes of prostitution, "debauchery," or "any other immoral purpose." *See* White–Slave Traffic (Mann) Act, ch. 395, 36 stat. 825 (1910) (codified as first amended at 18 U.S.C. §§ 2421–2424); *United States v. Ellis*, 935 F.2d 385, 389 n. 4 (1st Cir.1991). Presently, the Mann Act makes it a federal crime to knowingly transport (1) "any individual" with the intent that the individual engage in prostitution or "any sexual activity for which any person can be charged with a criminal offense," or (2) a minor with the intent that the minor engage in prostitution or criminal sexual conduct. *See* 18 U.S.C. §§ 2421–2424. The language of the following two statutes is critical to the court's present inquiry. Section 2421 provides:

Whoever knowingly transports any individual in interstate or foreign commerce, **or in any Territory, or Possession of the United States,** with the intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2421 (emphasis added). Section 2423(a), in turn, provides:

(a) Transportation with intent to engage in criminal sexual activity.—A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, **or in any commonwealth, territory or possession of the United States,** with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this tile and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a) (emphasis added).

Notably, prior to 1999, section 2423(a) did not include the language "in any commonwealth ... of the United States." In 1998, the 105th Congress promulgated Public Law 314, known as the Protection of Children from Sexual Predators Act. *See* Pub.L. No. 105–314, 112 Stat. 2974 (1998). Among other amendments, including raising the mandatory minimum penalty, Congress amended section 2423(a) to add "any commonwealth" before "territory or possession of the United States." *See* 144 CONG. REC. S12257–01, 1998 WL 701518 (daily ed. Oct. 9, 1998) (statement of Sen. Daniel Coats). Also within Public Law 314, Congress amended section 2421 by inserting "or attempts to do so," before "shall be fined" and by striking "five years" and inserting "10 years." *See* Pub.L. No. 105–314, 112 Stat. 2974; 144 CONG. REC. S12257–01, 1998 WL 701518 (daily ed. Oct. 9, 1998).

B. *An Abridged Background of the Relevant Events in Puerto Rico's Legal Status*

The story of Puerto Rico's relationship with the United States is like none other told in our history.[1] In 1898, the aftermath of the Spanish–American War resulted in the expansion the United States both to the east and to the west. Upon the signing of the Treaty of Paris, the United States acquired from Spain the territories of Guam and the Philippines in the Pacific, and Puerto Rico in the Atlantic. *Treaty of Peace,* December 10, 1898, U.S.-Spain, 30 Stat. 1754; *see also Consejo de Salud Playa de Ponce v. Rullan,* 586 F.Supp.2d 22, 26 (D.P.R.2008). Subsequently, from 1900 to 1917, Congress promulgated legislation that established the political structure and status of Puerto Rico, which established, inter alia, a local government paralleling that of a state, a bill of rights, and granted United States Citizenship to the people of Puerto Rico.[2] *See Córdova & Simonpietri*

1. "We readily concede that Puerto Rico occupies a relationship to the United States that has no parallel in our history...." *Examining Board v. Flores de Otero,* 426 U.S. 572, 596, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976). For a more comprehensive background on the unique history of the relationship between United States and Puerto Rico, *see, e.g., Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 671–74, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Córdova & Simonpietri Ins. Agen-*

cy, Inc. v. Chase Manhattan Bank, N.A., 649 F.2d 36, 39–41 (1st Cir.1981); *Consejo de Salud Playa de Ponce v. Rullan,* 586 F.Supp.2d 22, 26–40 (D.P.R.2008).

2. The court notes at the outset that, because this case involves the matter of statutory interpretation, the issue before the court is not that of the future political status of the island, nor does the court address the controversial constitutional framework that applies to the

*Ins. Agency, Inc. v. Chase Manhattan Bank, N.A.*, 649 F.2d 36, 39–41 (1st Cir. 1981) (discussing the Foraker Act, 31 Stat. 77 (1900) and the Jones Act, 29 Stat. 951 (1917); *Consejo*, 586 F.Supp.2d at 33–34 (same)). The purpose of this legislation was to give Puerto Rico the "full power of local self-determination with an autonomy similar to that of the [S]tates and incorporated territories." *People of Puerto Rico v. Shell Co.*, 302 U.S. 253, 261–62, 58 S.Ct. 167, 82 L.Ed. 235 (1937).

Additionally, in 1900 Congress established a territorial federal district court in Puerto Rico that operated just as the federal court of any other state, applying federal law in both civil and criminal proceedings with English as its official language. *See Consejo*, 586 F.Supp.2d at 34. Despite Puerto Rico's autonomy at this time, "Congress retained major elements of sovereignty. In cases of conflict, Congressional statute, not Puerto Rico law, would apply no matter how local the subject; and Congress insisted that acts of the Puerto Rico legislature be reported to it, retaining the power to disapprove them." *Córdova*, 649 F.2d at 39–41 (citing the Jones Act) (footnotes omitted). Accordingly, "prior to 1950, Puerto Rico's legal status was closer to that of a 'territory' than of a 'state.'" *Id.* at 40 (citing *Mora v. Mejias*, 206 F.2d 377, 386–88 (1st Cir.1953)).

In 1947, Congress passed the Elective Governor Act, which allowed the residents of Puerto Rico to elect their own governor, within the governmental framework previously set by the Foraker and Jones Acts. *See* Pub.L. No. 80–362, 61 Stat. 770 (1947). Up to this moment, under both Spanish and American control of the island, Puerto Ricans had never elected the island's governor. Thereafter, in 1950, Congress responded to demands for greater autonomy for Puerto Rico by passing Public Law 600, known as the Puerto Rican Federal Relations Act. *See* Pub.L. No. 81–600, 64. Stat. 319 (1950) (codified at 48 U.S.C. § 731 *et seq.*). Congress promulgated the Act "in the nature of a compact" with the people of Puerto Rico to empower them to organize "a government pursuant to a constitution of their own adoption." *See* 48 U.S.C. § 731b.

In 1952, Puerto Rico held a constitutional convention, and that same year, the voters of Puerto Rico adopted a constitution "within our union with the United States of America," and among the "determining factors in our life" was "our citizenship of the United States of America" and "our loyalty to the principles of the Federal Constitution." Preamble of the Constitution of Puerto Rico, 1 P.R. Laws Ann. p. 207 (1965); *see also Examining Board v. Flores de Otero*, 426 U.S. 572, 593, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976). The 82nd Congress approved the proposed Constitution with the exception of two sections that it eliminated, and two amendments that it imposed. *See* 98 CONG. REC. at 5119–28, 5126–27, 6184–86, 8715 (1952); Pub.L. No. 82–447, 66 Stat. 327 (1952). The people of Puerto Rico thereafter accepted the

---

people of Puerto Rico that was first established in a series of opinions known as the *Insular Cases*. In those cases, the Supreme Court held that the Constitution applied *ex propio vigore* in any territory that is not a state and established that Puerto Rico was an unincorporated territory of the United States. *See Boumediene v. Bush*, 553 U.S. 723, 756–57, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008) (citing *De Lima v. Bidwell*, 182 U.S. 1, 21 S.Ct. 743,

45 L.Ed. 1041 (1901); *Dooley v. United States*, 182 U.S. 222, 21 S.Ct. 762, 45 L.Ed. 1074 (1901); *Armstrong v. United States*, 182 U.S. 243, 21 S.Ct. 827, 45 L.Ed. 1086 (1901); *Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901); *Hawaii v. Mankichi*, 190 U.S. 197, 23 S.Ct. 787, 47 L.Ed. 1016 (1903); *Dorr v. United States*, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904)).

amendments and "Puerto Rico assumed 'Commonwealth' status." *Flores de Otero*, 426 U.S. at 593–94, 96 S.Ct. 2264. "[T]he purpose of Congress in the 1950 and 1952 legislation was to accord to Puerto Rico the degree of autonomy and independence normally associated with States of the Union." *Id.* at 594, 96 S.Ct. 2264.

Additionally, in November of 1953, the General Assembly of the United Nations recognized, inter alia, that "the people of the Commonwealth of Puerto Rico, by expressing their will in a free and democratic way, have achieved a new constitutional status." G.A. Res. 748 (VIII), ¶ 2, U.N. GAOR, 8th Sess., 459th plen. mtg., U.N. Doc. A/RES/748(VIII) (Nov. 27, 1953). As a result of Puerto Rico's new status, the United States had advised the United Nations that it would no longer report with respect to Puerto Rico pursuant to Article 73(e) of the U.N. Charter because Puerto Rico was now a self-governing Commonwealth. *See Córdova*, 649 F.2d at 40–41; *see also* Salvador E. Casellas, *Commonwealth Status and the Federal Courts*, 80 Rev. Jur. U.P.R. 945, 948 (2011).

Lastly, it is also important to note that in 1961, Congress once again legislated to provide Puerto Rico with a judicial state-federal court structure equal to that of States. *Consejo*, 586 F.Supp.2d at 36. At the time, the United States Court of Appeals for the First Circuit reviewed not only judgments of the federal district court, but those of the Puerto Rico Supreme Court as well. *Id.* This changed when the 87th Congress promulgated Public Law 189, which provided that review of

Puerto Rico Supreme Court judgments would now be before the United States Supreme Court. *See* Pub.L. No. 87–189, 75 Stat. 417 (1961). Thereafter, and most notably, in 1966 President Lyndon Johnson signed Public Law 89, which transformed the Article IV federal district court in Puerto Rico to an Article III Court. *See* Pub.L. No. 89–571, 80 Stat. 764 (1966). This Act of Congress was not conducted pursuant to the Territorial Clause of Article IV of the Constitution, but rather under Article III.[3] This marks the first and only occasion in United States history that Congress established an Article III district court in a non-state area other than the District of Columbia. From this moment on, judges appointed to serve on the Puerto Rico federal district court have been Article III judges appointed under said section of the Constitution of the United States. *Consejo*, 586 F.Supp.2d at 36.

Accordingly, although Congress has never enacted any affirmative language expressly stating that Puerto Rico is no longer an unincorporated territory, as many courts have observed, the legislative history indicates that Puerto Rico's transition to a commonwealth from a mere unincorporated territory "represents the fulfillment of a process of increasing self-government over local affairs by the people of Puerto Rico."[4] *Córdova*, 649 F.2d at 40; *Flores de Otero*, 426 U.S. at 592–596, 96 S.Ct. 2264; *United States v. Laboy–Torres*, 553 F.3d 715, 721 (3d Cir.2009) (O'Connor, J. (retired)). As Senior United States District Judge Salvador Casellas

---

**3.** Notably, this important change in the federal judicial structure of the island was implemented not as a direct request of the Commonwealth government, but rather at the repeated request of the Judicial Conference of the United States. *See* Senate Report No. 1504, 1966 U.S.C.C.A.N. 2786–90; *see also Consejo*, 586 F.Supp.2d at 37.

**4.** In his statement of approval of the Puerto Rico Constitution, House Majority Leader John McCormack described Public Law 600 as "a new experiment; it is turning away from the territorial status; it is something intermediary between the territorial status and statehood." 98 CONG. REC. 5128 (1952).

posits, "the key to understanding the nature of such change [is] the principle of consent." Casellas, supra, at 965; *see* Jose Trías Monge, *Plenary Power and the Principle of Liberty: An Alternative View of the Political Condition of Puerto Rico,* 68 Rev. Jur. U.P.R 1, 28 (1999) ("The change did not alone consist in the obtainment of self-government, but particularly in the fact that such consent became the basis of the relationship [with the federal government]."). Indeed, the status change was not a unilateral endeavor by the people of Puerto Rico. As explained above, the change emanated from the consent of both the governments of the United States and of Puerto Rico.

Lastly, and importantly, Puerto Rico's status change from that of an unincorporated territory to the unique status of a commonwealth meant that Puerto Rico was no longer merely bound by the Territorial Clause of Article IV. Rather, "the rights of the people of Puerto Rico as United States citizens, [were now bound] by the United States and Puerto Rico Constitutions, Public Law 600, the Puerto Rican Federal Relations Act and the rights of the people of Puerto Rico as United States citizens." *Córdova,* 649 F.2d at 41; *see also Consejo,* 586 F.Supp.2d at 41 (quoting *Córdova*).

### C. *Puerto Rico's Commonwealth Status and Statutory Interpretation*

■ Since 1953, the federal courts have had many opportunities to address the legal status of Puerto Rico. This issue has been raised in the context of determining whether Puerto Rico and the United States are "dual sovereigns" for constitutional doctrine purposes, *see, e.g., U.S. v. Lopez Andino,* 831 F.2d 1164 (1st Cir. 1987), and also in the jurisdictional context concerning whether particular statutes apply to Puerto Rico. *See, e.g., Córdova,* 649 F.2d 36; *First Fed. Sav. & Loan Ass'n of Puerto Rico v. Ruiz De Jesus,* 644 F.2d 910, 911 (1st Cir.1981). As a result of the developed case law, it has become well-settled law that Puerto Rico is no longer regarded as a mere territory; rather, it is a commonwealth—an autonomous political entity, sovereign over matters not ruled by the Constitution.[5]

The Supreme Court first tackled this issue in 1974, when it recognized that Public Law 600 and Puerto Rico's Constitution changed the island's status so that the Three–Judge Court Act, which is only applicable to the States, applied to Puerto Rico as well. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 670–76, 94 S.Ct. 2080, 2085, 40 L.Ed.2d 452 (1974).[6] In holding as such, the Court noted that before 1950, the courts had held that this statute did not apply to Puerto Rico because its status was that of a mere territory. *Id.* at 673, 94 S.Ct. 2080. Two years later, while abstaining from answering the question of whether Puerto Rico's status constitutes that of a territory or a state, the Court emphasized the sovereign nature of the island's commonwealth status in holding that suits brought pursuant to

---

5. *See, e.g., Rodríguez v. Popular Democratic Party,* 457 U.S. 1, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982); *Examining Bd. of Engineers v. Flores de Otero,* 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976); *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 2085, 40 L.Ed.2d 452 (1974); *U.S. v. López Andino,* 831 F.2d 1164 (1st Cir.1987); *U.S. v. Quiñones,* 758 F.2d 40 (1st Cir.1985); *Córdova,* 649 F.2d 36; *First Federal Savings and Loan Association of Puerto Rico v. Ruiz De Jesús,* 644 F.2d 910 (1st Cir.1981); *Mora,* 206 F.2d 377; *Consejo,* 586 F.Supp.2d at 39–41.

6. As a matter of personal privilege, the undersigned proudly notes that his father, Gustavo A. Gelpí Sr., argued this case before the United States Supreme Court.

42 U.S.C. § 1983 may be brought in the District of Puerto Rico. *See Flores de Otero,* 426 U.S. at 592–596, 96 S.Ct. 2264 (noting that in 1952 "Puerto Rico assumed 'Commonwealth' status" and that "the purpose of Congress in the 1950 and 1952 legislation was to accord Puerto Rico the degree of autonomy and independence normal associated with States of the Union").

In 1981, when addressing the question of whether 12 U.S.C. § 632 continues to confer jurisdiction on the United States District Court for the District of Puerto Rico to hear cases filed by federally chartered corporations involving banking transactions in Puerto Rico, the First Circuit noted: "Puerto Rico's territorial status ended, of course, in 1952. Thereafter it has been a commonwealth with a particular status as framed in the Puerto Rican Federal Relations Act." *Ruiz De Jesus,* 644 F.2d at 911. That same year, in *Cordova & Simonpietri Insurance Agency v. Chase Manhattan Bank N.A.,* the First Circuit held that the significant change in the degree of autonomy exercised by Puerto Rico and its unique commonwealth status meant that it ceased being a territory of the United States. *See Cordova,* 649 F.2d at 43–44. As such, the court held that the Sherman Act section forbidding agreements "in restraint of trade or commerce in any Territory of the United States," but not in the States, did not apply to Puerto Rico. *Id.; see also Trigo Bros. Packing Corp. v. Davis,* 159 F.Supp. 841, 842–43 (D.P.R.1958) vacated on other grounds sub nom. *Davis v. Trigo Bros. Packing Corp.,* 266 F.2d 174 (1st Cir.1959) (holding that Puerto Rico's commonwealth status rendered the language "or commerce within any Territory or the District of Columbia" rendered the Federal Alcohol Administration Act, 27 U.S.C. § 201, inapplicable to intra-commonwealth acts in Puerto Rico); *United States v. Figueroa Rios,* 140 F.Supp. 376 (D.P.R.1956) (holding that

Puerto Rico's commonwealth status rendered the language "or within any Territory or possession or the District of Columbia" referring to the transportation of a firearm in 15 U.S.C. § 901(2) inapplicable to the transportation within the Commonwealth of Puerto Rico of any firearm or ammunition under that Act). Four years after *Córdova,* the First Circuit once again emphasized that "in 1952, Puerto Rico ceased being a territory of the United States subject to the plenary powers of Congress as provided in the Federal Constitution. The authority exercised by the federal government emanated thereafter from the compact itself." *United States v. Quinones,* 758 F.2d 40, 42 (1st Cir.1985); *see also Laboy–Torres,* 553 F.3d at 721 ("It is thus not surprising that although Puerto Rico is not a state in the federal Union, it ... seem[s] to have become a State within a common and accepted meaning of the word." (internal quotation marks omitted)). *But see Davila–Perez v. Lockheed Martin Corp.,* 202 F.3d 464, 468 (1st Cir.2000) (holding that under the plain meaning of the Defense Base Act, 42 U.S.C. § 1651, Puerto Rico is an unincorporated territory that is covered by the Defense Base Act because it is still subject to the plenary powers of Congress under the Territorial Clause).

### D. *Analysis of the Present Statute*

■ Turning now to the present case, the court must determine, in light of the aforementioned discussion with respect to Puerto Rico's commonwealth status, whether section 2421 of the Mann Act applies to acts occurring wholly within the island Puerto Rico because it does not include the term "commonwealth" within its jurisdictional language.

In its brief to this court, the Government argues that like the District of Columbia, Puerto Rico remains to this day a

territory and possession of the United States. (Docket No. 43 at 6.) The Government first supports its argument by citing two cases: *United States v. Beach,* 324 U.S. 193, 65 S.Ct. 602, 89 L.Ed. 865 (1945) and *Crespo v. United States,* 151 F.2d 44 (1st Cir.1945). (*Id.* at 4–6.) In those cases, the Supreme Court and the First Circuit held that the Mann Act applies to acts occurring wholly within the territories and possessions of the United States, including Puerto Rico. (*Id.*) The Government also supports its argument with concurring and dissenting opinions from Judge Juan R. Torruella of the First Circuit, in which he posits that despite the grant of internal self-government to Puerto Rico and the approval of its Constitution, "no change was intended by Congress or Puerto Rico authorities in the territory's constitutional status or in Congress' continuing plenary power of Puerto Rico pursuant to the Territorial Clause of the Constitution." (*Id.* at 6–9 (citing *Igartúa–De La Rosa v. United States,* 417 F.3d 145 (1st Cir.2005) (Torruella, J., dissenting) and *United States v. Lopez Andino,* 831 F.2d 1164 (1st Cir. 1987) (Torruella, J., concurring))). The court will address these arguments accordingly.

■ As the question before the court today is a matter of statutory interpretation, the court is guided by the following principles. To begin, it is a well-established principle of law within our circuit that "[w]hether and how a federal statute applies to Puerto Rico is a question of Congressional intent." *Antilles Cement Corp. v. Fortuño,* 670 F.3d 310, 320 (1st Cir.2012); *see also Puerto Rico v. Shell Co.,* 302 U.S. at 258, 58 S.Ct. 167 (noting the meaning of a statute is to be "construed if reasonably possible to effectuate the intent of the lawmakers"). If the language of a statute has a plain and ordinary meaning, "[t]he plain meaning of [the] legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (internal quotation marks omitted). Furthermore, when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal quotation marks omitted) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).

As discussed above in parts I.A. and I.B. of this opinion, it been well-settled law within the First Circuit for well over thirty years that Puerto Rico is judicially recognized as a commonwealth as opposed to a mere territory. *See Flores de Otero,* 426 U.S. at 593–94, 96 S.Ct. 2264; *Córdova,* 649 F.2d at 41. Indeed, seventeen years before Congress promulgated the Protection of Children from Sexual Predators Act, the First Circuit held that the Sherman Act section forbidding agreements "in restraint of trade or commerce in any Territory of the United States," but not in the States, did not apply to Puerto Rico. *See Córdova,* 649 F.2d at 43–44. In reaction to the status change, it appears that Congress added in the term "commonwealth" into section 2423(a) when it amended the Mann Act in 1998. As such, we are left with the plain and ordinary meaning of that section to include *intra*-commonwealth acts within the Commonwealth of Puerto Rico. *See* 18 U.S.C. § 2423(a). However, despite also amending the language of section 2421 in the same session, Congress omitted the term "commonwealth" from said section. Under the rule

established by the Supreme Court, it necessarily follows that by including "commonwealth" in section 2423 but not in section 2421 of the same act, it is to be generally presumed that Congress acted intentionally and purposely in the disparate inclusion and exclusion. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. at 452, 122 S.Ct. 941. Also informative is that Congress added the language "any commonwealth, territory, or possession of the United States" in the definition of the term "State" in the repeat offender section of the Mann Act. *See* 18 U.S.C. § 2426(b)(2). Nevertheless, because the rule allows only for a general presumption concerning the intent of Congress, the court will continue with its analysis.

Further bolstering the court's conclusion is that judicial precedent acknowledging the commonwealth status of Puerto Rico was binding and well-established for many years before Congress made the aforementioned amendments in 1998. The doctrine of ratification states that "Congress is presumed to be aware of [a] ... judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 770, 124 S.Ct. 2204, 159 L.Ed.2d 60 (2004) (citing *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)). As such, while the court knows of no cases interpreting the Mann Act with respect to Puerto Rico's

commonwealth status prior to 1998, it is fair to assume that Congress was aware of the precedent discussed in part I.B. when it made the many amendments to the Mann Act and failed to include "commonwealth" in section 2421. To this day, the Supreme Court has not overturned or challenged the express holdings of the First Circuit and this court is not alone in interpreting the Mann Act with respect to Puerto Rico's commonwealth status after 1998. *See United States v. Carrasquillo–Penaloza*, No. 12–728, 2013 WL 1490085, at *2 n. 2 (D.P.R. Apr. 10, 2013) (Pérez–Giménez, J.) (noting that prior to 1950, "Puerto Rico was considered a territory of the United States and thus, treated as one under the applicable statute." However, Puerto Rico was subsequently given commonwealth status on 1952 and the language of the statute at hand [section 2423(a)] has been since amended to include the term "commonwealth"); *United States v. Medina–Ayala*, 906 F.Supp.2d 20, 22 (D.P.R.2012) (Fusté, J.) (noting that section 2423(a) applies to Puerto Rico because of the specific addition of the word "commonwealth" to the existing language of the Mann Act). Therefore, the court simply cannot conceive any other intention for the inclusion of the word "commonwealth" in section 2423(a) other than to include the Commonwealth of Puerto Rico within the jurisdiction of the statute.[7] *See*

---

**7.** Additionally, a survey of other federal statutes in the United States Code, particularly those within Title 18, reveals that Congress has amended the language of those statutes to expressly include "Commonwealth" or the "Commonwealth of Puerto Rico." *See, e.g.*, 18 U.S.C. § 13(a) (distinguishing "the jurisdiction of any State, Commonwealth, territory, possession" when making state law applicable to conduct occurring on lands reserved or acquired by the federal government as provided in 18 U.S.C. § 7(3), when the act or omission is not made punishable by an enactment of Congress); 18 U.S.C. § 1715 (making an

exception to the nonmailable firearm law to, inter alia, "officers of the National Guard or Militia of a State, Territory, Commonwealth, Possession, or District; to officers of the United States or of a State, Territory, Commonwealth, Possession"); 18 U.S.C. § 2281 (noting "the term 'State' means a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States"); 15 U.S.C. § 78dd–1 (defining "United States person" as constituting, inter alia, any organization "organized under the laws of the United States or any State, territory, possession, or commonwealth

*Medina–Ayala,* 906 F.Supp.2d at 22 ("There could hardly be a clearer intention of purpose than the specific addition of the word "commonwealth" to the existing language of the Mann Act.").

To the extent that the Government relies upon two cases dating back to 1945, those being *United States v. Beach* and *Crespo v. United States,* the court notes that at that time both cases were published there was no debate over whether Puerto Rico was a territory of the United States. *See Córdova,* 649 F.2d at 40; *Mora,* 206 F.2d at 386–88. Prior to 1950, Puerto Rico was indeed considered a mere territory of the United States, and, as such, fit squarely within the jurisdictional requirements of Mann Act. *See Crespo,* 151 F.2d at 45 ("There is no question as to the power of Congress to legislate for the territories nor that Puerto Rico is a territory within the meaning of the Act."). Furthermore, although the Government cites the opinion in *United States v. Carrasquillo–Penaloza* for the proposition that both *Beach* and *Crespo* "serve as binding precedent to this [c]ourt," the undersigned directs the Government's attention to footnote 2, in which Judge Pérez–Giménez notes the distinction between the political status of a commonwealth and a territory and the timing of the publication of *Crespo.* *See Carrasquillo–Penaloza,* 2013 WL 1490085, at *2 n. 2.

Furthermore, the undersigned acknowledges the concurring and dissenting opinions of Judge Torruella of the First Circuit, in which he intricately posits that Puerto Rico still retains the political status of a mere unincorporated territory. *See Igartúa–De La Rosa,* 417 F.3d at 158–84; *United States v. Lopez Andino,* 831 F.2d at 1172–77. However, as a United States District Court judge, the undersigned must adhere to the First Circuit precedent as authoritatively set forth in the opinions explained in part I.B. of this opinion. Therefore, because the First Circuit has expressly held that Puerto Rico is no longer a territory, as it is a commonwealth, and Congress has acknowledged this in many other statutes in the United States Code, including section 2423 of the Mann Act, the court is bound to this jurisprudence and applies it today accordingly regardless of whether it may ultimately be in agreement with Judge Torruella or otherwise.[8]

Lastly, insofar as the Government argues that the inclusion of the word "commonwealth" in Puerto Rico's title did not change the island's status, much like the States Massachusetts, Kentucky, Virginia, and Pennsylvania are commonwealths in title, the court finds that this argument fails to swish. (*See* Docket No. 43 at 7.) Those commonwealths have since been established as States of the Union and thus referring to them as commonwealths in the United States Code would serve no purpose. *See Couvertier v. Gil Bonar,* 173

---

of the United States, or any political subdivision thereof").

8. The court notes that Judge Torruella's minority stance in the First Circuit has been accepted by other courts as correctly delineating the current political status of Puerto Rico. The Eleventh Circuit and the Puerto Rico Supreme Court agree with his position. *See United States v. Sanchez,* 992 F.2d 1143, 1151–52 (11th Cir.), on reconsideration, 3 F.3d 366 (11th Cir.1993) (disagreeing with the First Circuit's conclusion that Congress's

decision to permit self-governance in Puerto Rico makes it a separate sovereign for double jeopardy purposes and espousing Judge Torruella's concurrence in *Lopéz Andino*); *Pueblo v. Sanchez Valle,* No.2013–68, 2015 TSPR 25, 2015 WL 1317010 at *27–29 (P.R. Mar. 20, 2015) (holding that the Commonwealth of Puerto Rico is not a sovereign entity, but rather a territory in which its ultimate source of power to prosecute crimes derives from Congress).

F.3d 450, 453 (1st Cir.1999) (noting the time-honored tenent that "[a]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous"). Additionally, as explained in part I.A. of this opinion, Puerto Rico's change to a commonwealth was not a mere unilateral decision by the people of Puerto Rico; rather, Public Law 600 and the Constitution were created "in the nature of a compact" with the people of Puerto Rico and the United States. *See* 48 U.S.C. § 731b; Casellas, supra, at 965. Therefore, Puerto Rico's status change was not mere one-sided endeavor.

In holding as it does today, the court acknowledges that 18 U.S.C. § 2421 of the Mann Act is an important and powerful tool for redressing sexual crimes that involve victims and occur in this District. That being said, the court cannot sustain a conviction wherein a defendant pleads guilty to a crime that does not apply to his admitted actions. To reiterate, this District Court must apply binding First Circuit precedent as authoritatively set forth. To do otherwise would result in judicial dereliction. When the court follows said precedent and the basic principles of statutory construction, the result is clear: section 2421 of Title 18 of the United States Code does not apply to wholly intra-commonwealth transportation of an individual within the intent to engage in criminal sexual activity.[9]

## II. Conclusion

Accordingly, in light of the aforementioned reasoning, the court hereby holds that 18 U.S.C. § 2421, which makes it a

federal crime to transport any individual within the intent to engage in criminal sexual activity "in interstate or foreign commerce, or in any Territory or Possession of the United States," does not apply to the Commonwealth of Puerto Rico. Accordingly, the Judgment at Docket No. 44 is hereby **VACATED.**

**SO ORDERED.**

---

9. In any event, the court is not suggesting that Defendant's conduct go impune. The federal government may still charge him under an-

other applicable statute or refer him to Commonwealth authorities.